Good afternoon. Council. May it please the Court. Ralph Waldo Emberson once wrote, Truth is the property of no individual, but the treasure of all men. This case is all about What's that? Where did that maxim come from? I don't know. I just pulled a quote. Got me already. Truth is all at the center of this case. The credibility of the petitioner is at the center of this case. The Commission's authority to rule on the credibility of the witnesses is at the center of this case. The Commission, in deciding this case, specifically found Petitioner not credible. In their decision, they cited five different examples where credibility was lacking, credibility was suspect, left with information that didn't persuade them as to Petitioner's abilities to return to gainful employment. The Commission denied Petitioner 8D1 wage loss benefits. In so doing, they found him not credible on what he was capable of doing and what he was capable of earning in full employment. There was ample evidence presented at trial as to Petitioner's work capabilities by both surveillance evidence as well as his own testimony, Mr. Weitzel's own testimony. There was ample evidence of him engaging in construction activities. Petitioner, at the time of the trial, was engaged in employment in a sedentary capacity in Wisconsin where he was working for a collection agency earning $9 an hour. Respondent presented evidence by, through a labor market survey conducted by Edward Steffen, outlining the wages available to a person engaged in construction activities. The Commission, in their decision, seemed to ignore that evidence by pointing to the fact that Respondent presented no evidence on what Petitioner was capable of earning other than the $9 that he testified to. Respondent presented specific evidence. If you look closely at the Respondent's Exhibit No. 4, Respondent presented evidence that Petitioner would be capable of earning between $35.32 and $35.12 if he were employed as a union carpenter. And just to get the procedures correct, the Commission found that the claimant failed to prove he was entitled to a wage differential, essentially holding that while he could not return to his former occupation as a sheet metal worker, he had failed to establish that he had suffered an impairment of his earning capacity, in part because of all these other videos and tapes showing that he was able to engage in substantial activity. Correct. The circuit court reversed the Commission, correct?  So you're not troubled by the Commission's decision, are you? Not at all. I'm asking you to affirm the Commission's decision. It's their unique province to assess the credibility of the witnesses. Whether the five individuals sitting before me today disagree with that assessment is not appropriate. It's their decision to assess whether Mr. Whitesell was credible or not. They didn't find him credible. Therefore, they felt that he did not meet the burden under Section 8d1 to prove up entitlement to a wage loss. Therefore, they denied it. There's no argument here from where I stand that the Commission got that wrong. I think they got it absolutely correct. The one who got it wrong was Judge Connell out in Kane County, who felt that he had the authority to overrule their assessment as to his credibility. He did not, nor do you. Well, I think we don't need to be told what we do in our job. I'm going to be real careful with what you tell us when we can or can't do. Absolutely. So let's stay procedurally with where your argument is. Okay. You're asking that the Commission decision be reinstated. Correct. Okay. I'm asking that their assessment as to his credibility be reinstated, as it's their authority to assess the credibility of the witnesses. So the trial judge felt what? Why did the trial judge overturn the Commission? Why did the trial judge? He felt that informally that the Commission got it wrong as to the level of evidence presented as to his credibility. Informally? Informally. He wrote a short order. It was a matter of law as well as a manifest weight standard. My argument as to manifest weight was there was ample evidence as to the lack of credibility for Mr. White, so for the Commission to render their decision as they have and as they did, as was overturned by the circuit court. In looking to the credibility assessment rendered by the Commission, there was ample video surveillance. There was medical testimony going back to 2002 with regards to his strength in the wrist, with regards to his abilities to perform labor. There was an opinion authored by Dr. Shank as to Petitioner's abilities to perform carpentry work. In short, there was evidence wholly supporting the decision with regards to the Commission's decision on credibility. Once the Commission ruled against him on the issue of credibility, that colors all aspects of Petitioner's case. If he's not credible, how can he prove up entitlement to an 81 wage loss when they do not believe he is performing what he is able to do, given his age, educational background, and work restriction? Why is he not credible? They felt that he was engaged in employment at a reduced earning capacity at $9 an hour. They felt he was capable of earning substantially more than $9 an hour by virtue of his physical conduct on surveillance as well as his own testimony. Petitioner conceded at trial that he was engaged in construction-type activities. Based on that information, they felt Petitioner was capable of earning much more than $9 an hour, and they denied his wage loss where he was asserting a $9 an hour wage would be the appropriate wage by which to award an 81 wage loss. Well, they found him not credible in his contention that he could do anything more than 10 bar or do opposite. Correct. They didn't feel he was engaged in what he was capable of doing, i.e., making an honest effort to engage or to earn an honest wage. Based on that contention, based upon their findings on his credibility, they felt that they were not able to award 81 wage loss. The Circuit Court, in reviewing it, did not get it right. We would ask that the decision of the Commission be reinstated and an award consistent with the Commission's decision be entered by this Court. Good afternoon. May it please the Court, Mr. Cook. My name is Stephen Cook. I'm here in Globus on behalf of the appellee, Kyle Weitzel. We do not agree that the Commission's finding that Mr. Weitzel understated his capabilities and activities requires a finding that he should be denied a wage differential. Well, that wouldn't be the test. You're here in a manifest way. Well, I actually have two positions. First of all, that the Commission's decision was contrary to the law and secondary to the manifest way of the evidence. How was it specifically? I'm sorry. All the things that have been floating around here, to establish an impairment of earnings, the claimant must show he is not earning or is not able to earn as much as he earned before the injury. The claimant must establish that what he is actually earning after the injury is what he is able to earn. There's apparently surveillance tapes. There's a lot of evidence, you'd have to admit, that shows the defendant or the claimant really has ability to engage in substantial physical activity. Yes. And there's two practical effects of that evidence and that finding. First of all, they disregarded his testimony about the endurance of his wrist. However, there's other evidence in the record about his physical capabilities that the Commission relied upon, specifically the findings, opinions, and conclusions of his doctor, Dr. Witt. Dr. Witt concluded, and the Commission adopted his opinion, that he cannot return to work as a sheet metal worker. I don't think anyone's disputing that. Correct. The second practical effect of that finding is they found that he was physically capable of doing more demanding work than as a collection agent. However, there's no showing that such work is available to him and there's no showing that such work would pay him more. He is still entitled to a wage differential as a matter of law. And I'll explain to you why. Section 8D2 has two elements. First of all, it must be proven there's an incapacity from pursuing the usual and customary employment. The second element is it must be demonstrated that there is a loss of earning capacity. Section 8D2 provides two alternative methods of demonstrating a loss of earning capacity. The first one is the claimant can show the difference between, or two-thirds of the difference, between what he would be making if he wasn't injured and the average amount that he is earning after the accident. The second method is two-thirds of the difference between the amount that he would be earning and the amount he could be earning in some suitable employment after the accident. Here, the commission found Mr. Whitesell was unable to pursue his usual and customary employment. As to the second element of the claim, the evidence of the difference between the amount he would be making and the amount that he is earning was unchallenged and unrebutted. It was proven the amount that he actually is earning after the accident, not only by his testimony, but by his wage records and by his tax records. All that was put in evidence, and there was no challenge to the amount that he's actually earning. That was proven. Therefore, all the statutory elements of an 8D1 were proven. Now, I understand that there are concerns in this type of case. In this case and in any case, that the claimant may be underreporting or underclaiming his earnings. That his earnings doesn't truly reflect his earning capacity. And that's remedied under the statutory scheme by permitting either party to produce evidence of the amount that the person could be making in suitable employment. Here, the commission found the employer did not present evidence of Mr. Weitzel's earning capacity. So we have a finding that he cannot return to work to his usual and customary employment. We have uncontested evidence that his actual earnings are substantially less than the amount he would be earning. And we have an absence of a finding of what amount more, if any, he could be earning in suitable employment. These facts compel a finding that as a matter of law, Mr. Weitzel is entitled to a wage differential under section 8D2. 8D1, I'm sorry, 8D2. Furthermore, it's been proven that the commission's decision he does not have a loss of earning capacity was against the manifest weight of the evidence. Only one reasonable conclusion can be drawn from the following facts. It was proven that he's no longer able to work in his high-paying job as a sheet metal worker. It was demonstrated that he has an actual loss of earnings over a period of almost 10 years from November of 2006, pardon me, from November of 1996 to November of 2006. Well, that seems to be the route. That doesn't appear to be disputed. The question is, could he have earned a higher wage given the physical activity that is observed? He says, as you know, your position is he has to have a sedentary job. Obviously, that's part of your argument. His earning capacity has been impaired because really he can't do anything other than sedentary jobs. He's waving around videos that shows the guy running around like he's got the ability to earn substantially higher in construction trades. I have to correct you. He's never said he could only do sedentary jobs. Matter of fact, he did an extensive job search, and he performed other employments that weren't sedentary. He did light carpentry work. He was a bartender. He was a waiter. That's not his position. He's obviously has the ability to engage in some physical activity, correct? Yes. So what's preventing him from doing that? He doesn't have transferable skills. He doesn't have any specific education geared towards any type of vocation, other than what he was doing as a sheet metal worker. There's no evidence here that any higher paying employment. What did he do as a sheet metal worker? He crawled around in furnaces. He had to cut metal. He said the most bothersome aspect of doing work as a sheet metal worker was he had to be on all fours a lot. He had to crawl around. I'm talking about transferable skills. I mean, sheet metal workers can measure, can install. There's lots of sheet metal workers. He testified that after his separation from employment with this particular respondent, he tried to get other work affiliated with sheet metal working, like giving estimates, supervisory positions, which he couldn't find. He also attempted a light carpentry job, but that was not regular work, and it paid $10 an hour, and it wasn't actually even employment. He was a contract. So he attempted to return to his former employment for two years. He went back to sheet metal work for two years and was ultimately unable to do it. He had regularly increasing restrictions until ultimately he reached the point where he couldn't do it anymore. He conducted a diligent job search. There's testimony there from a vocational rehabilitation counselor, Mr. Pagela, that he conducted a diligent job search as evidenced by the fact that he looked for, that he obtained, and he worked a number of different employments, including light carpentry, including a bartender, including a waiter, including a supervisor of maintenance and a cleaning location. And ultimately the best job, the best paying job that he found was working as a collection agent, which pays $9 an hour plus commissions. There's no evidence that he ever declined a higher paying job. There's no evidence that he ever declined vocational rehabilitation. In fact, he asked the employer for vocational rehabilitation, and they wouldn't give it to him. And he also has a great deal of motivation here to earn more money than he was making. Because of the operation and the application of the maximum rate here in his case, he could be making twice as much money. He could be making $18 an hour. He could be making $19 an hour. He could be making $20 an hour, and the award for the wage differential would still be the same amount. So he's got every incentive to try to find a higher paying job. This was the best he could do. To conclude that he does not have a wage differential, to conclude that he does not have a loss of earning capacity is illogical and is unreasonable and is against the manifest weight of the evidence. His life situation and his earning capacity were permanently altered, and he should be compensated under Section 8D1. And I would ask that you affirm the decision of the Circuit Court and reinstate the arbitrator's decision awarding him a wage differential under Section 8D1. What happened to this case for nearly six years? The case was tried. Well, we know on April 10, 2002, with one dissent, it was sent back for additional evidence regarding both rehab and impaired earning capacity, where it languished until it was assigned to an arbitrator in 06, hearing in June of 06, and an award in August of 06. Right. It kind of fell off the commission. It didn't get on a call. And I wasn't he had another attorney initially who eventually stopped practicing law. What, his fault? I'm not sure. I didn't get involved in this until 2005, 2006. So I can't really speak to the actual procedural circumstances of why it didn't make it on remand back to the commission's call. But, yeah, there was about a three- or four-year gap there where just nothing happened with this case. Pretty sad. Yes. This man, he spent, you know, this case has taken from the age of 28. He was 28 when this accident happened. He's now 42. So this case has covered his prime earning years, and those are gone. Thank you, counsel. Counsel, please. To answer your question more specifically, it did fall off the commission docket for a number of years before I came into the case. And I believe I had the motion in front of the commission to spindle it back up, and that's when it got back up in 2006. So I'm going to fast-forward it from there. Counsel, what about the argument in front about the lack of earning capacity, that he has no transferable skills, he has no locational skills? How can you argue that he's not doing the best that he can? Because the commission found that he's not doing the best that he can. They didn't believe that he's not doing the best that he can based upon the evidence presented at trial. Surveillance evidence, Dr. Shank's medical opinion. Dr. Shank opined that he could perform the duties of a carpenter, physically perform the duties of a carpenter. The commission simply did not believe Mr. Whiteside. He had been in front of the commission twice. First time they didn't believe him. They said, you know, there's not enough evidence here. We don't know what decision to make. When it came back in 2006, they said we are faced with the same situation. We find the petitioner's credibility lacking. Based on that, we don't have the ability to award an 8D1 wage loss. Simply put, if you don't believe the petitioner, isn't everything else speculative? Are we going to guess, oh, well, actually, if we don't believe you, but maybe you could be making $12 an hour, $15 an hour, $20 an hour, $40 an hour. They simply didn't believe he was doing what he would be capable of doing, given his physical restrictions as evidenced by the surveillance evidence, the doctor's opinions, and failed to award him his wage loss. I can't speculate what the man could be earning because I don't know what he could be earning. I just don't believe he's only able to make $9 an hour. The commission felt he was able to earn more. Is it their job to speculate what he could be earning if he was engaged in more physical activities? Then we would have a problem with speculation. The crux of this case goes back to the commission's finding that they did not believe petitioner's testimony. There's ample evidence in the record to support that credibility finding. I would ask that the commission decision be reinstated as completely within the bounds of their statutory duty and that the award be reinstated from the commission. Thank you. Thank you, counsel. The court will take the matter under advisement for this position.